### In re EMPIRE CORK CO.

(District Court, E. D. New York. January 18, 1912.)

BANKRUPTCY (§ 163*)—ASSIGNED ACCOUNTS—COLLECTION OF CLAIMS—APPLICATION.

> The bankrupt, between November 29 and December 3, 1909, being unable to obtain supplies of corkwood which it required, and being unable to obtain further unsecured credit from G. & Co., who already had a claim of $7,000 against it, induced G. & Co. to deliver an additional quantity of corkwood amounting to $1,345.21 on credit on an assignment to it of accounts due the bankrupt amounting to $1,383.01 to secure $500 of such additional credit, but which was in fact an assignment for $500 to pay that amount on the existing debt for wood so additionally sold. G. & Co. collected on account of the assigned claims $799.12, leaving unpaid $546.09, which was subsequently collected by the trustee. *Held,* that such assignment, in so far as it was made to pay a portion of the new indebtedness for wood delivered, was not preferential, but was a valid transfer as against the bankrupt's other creditors, but that G. & Co. were not entitled to have the balance collected by the trustee from such assigned accounts applied to the payment of the balance of the new debt under a mere parol agreement with the bankrupt, but as to that part were bound to participate in assets as general creditors.

> [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 247, 248; Dec. Dig. § 163.*]

In the matter of bankruptcy proceedings of the Empire Cork Company. Motion by A. S. Gouvea & Company for the reclamation of goods sold to the bankrupt and for the payment of collections beyond what was already in their hands. Denied.

Dos Passos Bros., for claimant.
Oscar A. Lewis, for trustee.

CHATFIELD, District Judge. Between November 29 and December 3, 1909, the bankrupt was unable to secure supplies of corkwood which it required. Joseph B. Regan, the president, J. B. Ribas, the treasurer, and Charles F. Lehmann (who seems to have then agreed to get security for further purchases of corkwood by the company), were unable to obtain further unsecured credit from A. S. Gouvea & Co., who already had a claim of some $7,000 which they were

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

193 F.—15

pressing. Between the dates mentioned—that is, in the space of four days—a quantity of cork was delivered, for which an assignment of accounts was made; the assignment being dated November 29th, but, according to the finding of the commissioner (which has been confirmed), not actually signed until December 3d. The question of the validity of this assignment coming up as against the trustee in bankruptcy, and adjudication having been had upon the 30th day of December, 1909, the matter was referred to a special commissioner, who limited his report to a mere determination of the date on which the assignment was actually made. His finding fixes the execution of the instrument upon the 3d day of December, when it would appear that Lehmann was called to the office of the bankrupt, and, after some discussion over its financial affairs, suddenly demanded, as he was leaving, that the officers execute the assignment of accounts, and that this was at the close of the deliveries rather than before any deliveries were made.

The motion has now been brought on for final disposition; the accounts having been collected, and some $561.28 being in the hands of the trustee. The total amount of credit extended was $1,345.21, and Gouvea & Co. have already collected on account of the assigned claims $799.12, leaving unpaid $546.09, which is demanded from the fund in the trustee's hands. The assignment in question is to secure credits to the sum of $500, and provides for the collection of the accounts assigned (amounting, as has been said, to some $1,383.01) to Gouvea & Co., until the amount of credit is repaid. In other words, these accounts were transferred to Gouvea & Co. merely as security for what, according to the instrument, appeared to be a future credit for $500, but, according to the findings of the commissioner, was a simultaneous or subsequent execution of an assignment for $500 to pay an existing debt of over $1,300.

As was said in the previous memorandum, an assignment to secure an indebtedness, which is shown by the testimony to have been incurred for a present valid consideration, would seem to be a debt incurred for the enrichment of the estate, and would have to be paid in full, as it could be held neither preferential nor fraudulent. Hence the issue which was previously referred, and which still exists undetermined, is whether or not the assignment was exchanged for the goods already delivered, and whether, if given, the assignment was valid to the extent of over $1,300, although in terms being for but $500.

Certain things can be presumed. It is not disputed that the amount of cork delivered between November 29th and December 3d was worth what is claimed, namely, over $1,300, nor would it seem to be possible of dispute that the assignment of accounts when made, whether it be upon the 29th of November or the 3d of December, was delivered as a part of one transaction. The testimony shows that further credit was refused until security was promised, and the execution of the agreement, even assuming that it was made at the interview upon the 3d of December, at the instance of Lehmann, was evidently a mere carrying out of the purchase not yet completed. Such a payment would be no more preferential nor fraudulent than if cash had

been turned over to Gouvea & Co. at the close of the deliveries, on an understanding that payment was to be made in cash. A "present consideration," in the sense of the use of that term in bankruptcy cases, would include a payment at the completion of delivery in a series of transactions, if those transactions were all part of the same purchase of goods, and if the exchange of the payment for the goods was but the completion of a delivery in which neither title had passed nor credit beyond delivery been extended with respect to the partial deliveries previously made.

It is apparent that the corporation was in difficulties, and that this condition was known to its officers, to Lehmann, and to Gouvea & Co. If the deliveries of cork on November 29th and December 1st were made upon credit without security, or upon the guaranty of Lehmann alone, then a payment to the Cork Company, on December 3d, of such a debt, would have been preferential and could be avoided by the trustee.

But the evidence would seem to show that Gouvea & Co. refused to extend further credit except upon actual payment by the assignment of accounts, which was equivalent to the giving of collateral to them for their claim, and in this instance this assignment of accounts was accompanied by delivery of the evidences of those accounts, when the assignment was completed. In fact, Gouvea & Co. collected these assigned accounts until bankruptcy intervened, and since that they have been collected subject to Gouvea's title thereto. Hence it seems necessary to hold that even if the Empire Cork Company was insolvent upon the 29th day of November, and the assignment was not executed until the 3d of December, and dated back to the 29th of November, it would be valid as a transfer of these accounts to the extent of $500. But for this amount when collected by Gouvea & Co. an accounting could be had, and as to any balance they would be trustees for the bankrupt estate.

It is then necessary to determine whether or not Gouvea & Co., having an indebtedness of over $7,000 with an additional debt of $1,345.21, to secure which they had a written assignment for $500, while claiming the right to apply the security beyond that amount, applied the $799.12 first collected to their original debt, or to the new debt not covered by the terms of the assignment, or to the indebtedness which the assignment expressly referred to. There is nothing to indicate that they did, or claimed the right to, apply this sum to their general indebtedness of $7,000. The agreement in writing which they received, and under which they acted, and as to which they claimed there was an oral promise to increase the amount, provides that the collection shall be applied first to the payment of $500 actually assigned therein. A knowledge of what it contains must be presumed from possession on the part of Gouvea & Co., and they must therefore be held to have applied the first $500 to the satisfaction of the amount ordered by that agreement. That leaves them with $299.12 in their hands to apply upon the balance of $1,345.21, and it apparently was so applied. They are now claiming, as has been said, the right to apply the balance actually collected by the trustee of

$561.28 to the balance secured merely by oral agreement and remaining unpaid to the extent of $546.09. As to this it must be held that an oral agreement to give an assignment or to pay cash is not equivalent to an actual payment. If a contract to give security to the extent of over $1,300 was made, it was not lived up to, and hence there was a breach of that contract at the time the written assignment for $500 was delivered. Assuming that the transaction was a sale for a present consideration, nevertheless the present consideration only protected what was actually turned over therefor, and any amount of verbal representations or promises would not take the creditors out of the category of unsecured creditors in bankruptcy. As to this $545, therefore, we have the simple proposition of a creditor with over $8,300 due, and with the right to apply certain assets when realized to the payment of $500 of that debt under a power of attorney over those assets as yet uncollected at the time of bankruptcy. The express power of attorney having been terminated by bankruptcy except as to the exercise of authority over the collateral for the purpose of paying the debt for which security was given, and the oral contract to give further security having been broken, it is impossible to hold that the creditors who have never received these assets are entitled to now work out a preference after bankruptcy which they could not have obtained prior to bankruptcy, and they can have no claim upon the balance of these accounts in the hands of the trustee, any more than they could, as general creditors, insist that an oral agreement had been made at the time of the sale of goods to pay cash for the goods, but that, contrary to this agreement, the goods had been delivered without pay, and the money for the payment had been partly retained by the debtor (even if actually traceable or labeled and held as security for the claim).

The motion for the reclamation of the goods and for payment of collection beyond that already in the hands of Gouvea & Co. must be denied.